FILED
2026 Nov-05 PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RACHEL MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:23-cv-1764-EGL** |
| | ) | |
| **OLLIE'S BARGAIN OUTLET INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

In this slip-and-fall case, Rachel Moore brings claims for negligence and wantonness under Alabama law against Ollie's Bargain Outlet Inc., after tripping when stepping down from an industrial rubber floor mat on the way to the restroom in Ollie's store. *See* Doc. 15. Ollie's moved for summary judgment. Doc. 32. For the reasons that follow, its motion is due to be **GRANTED**.

## BACKGROUND

Rachel Moore fell after walking across an industrial floor mat at Ollie's Bargain Outlet, causing her ankle to pop and swell. *See* Doc. 15 at 3 ¶¶9–11. Moore's First Amended Complaint was dismissed for failure to state a claim because it failed to explain what made the floor mat dangerous. Doc. 13 at 4. So Moore pleaded additional facts in her Second Amended Complaint to survive dismissal. *See* Doc. 22 at 4–5.

Specifically, Moore alleges "Defendant created and improperly maintained a dangerous condition by poorly positioning an industrial rubber floor mat over a gap in the floor causing the mat to be in an unsafe manner." Doc. 15 at 3 ¶9. "[D]ue to the poor placement of the industrial rubber floor mat, Plaintiff tripped as her foot was caught on a ridge of the mat and fell." *Id.* at ¶10. "Defendant was responsible for the maintenance of the aforementioned location and the industrial rubber floor mat." *Id.* at ¶11.

The Court denied Ollie's motion to dismiss on these facts. Doc. 22. The Court found that "covering a gap in the floor with a floor mat"—or, put differently, "consciously placing the floor mat in a way that posed a hidden danger to customers"—may have constituted a breach of duty and reckless or conscious disregard for the safety of others. *Id.* at 4–5. These allegations about the mat covering a gap or a crack were central to the Court's decision to deny Ollie's motion to dismiss. *Id.*

Once in discovery, Moore was deposed and shared her recollection of the events as they transpired on April 30, 2026. *See* Doc. 32-1. Despite her allegations being necessary to state a claim, she does not remember or recall anything about the mat being used to cover a crack. *Id.* at 38–39.

What she does recall is that the mat was lying flat when she tripped on it. *Id.* at 39. She remembers entering Ollie's to use the restrooms at the back of the store.

*Id.* at 32–34. She saw the mat as she approached the restrooms; it was visible and nothing obstructed her view. *Id.* at 37–38, 40. "It was laying flat" on the concrete floor and made of black rubber. *Id.* at 38, 41; Doc. 32-2 at 33, 57. When she saw it, she thought it was part of the store's décor, a mat that the store used. Doc. 32-1 at 40. She has previously seen mats like this one used in stores and near the entrance when there had been rain. *Id.* In her view, such use is common. *Id.* (In this case, it had not been raining. *Id.* at 41.)

As she approached the restrooms and saw the mat, she was looking and walking straight ahead. *Id.* at 39. She saw her mother, who was more than 70 years old, Doc. 32-2 at 28, head in the same direction and walk the same way across the mat before her, Doc. 32-1 at 36, 50–51.

Next, Moore walked across the mat. *Id.* at 42. She took at least two steps on the mat before stepping off it with her left foot. *Id.* at 42–43. She does not know if she lost her balance or actually caught part of her shoe on the mat. *Id.* at 44. But she remembers the edge of the mat was uneven and sat high. *Id.* As she put it, the edge of the mat is "high off the ground, like a little step." *Id.* at 42. She did not know the height and did not recognize that there was a difference in height between the mat she was walking across and the concrete floor to which she was returning. *Id.* at 43. As a result, when she stepped off the mat onto her left foot, her ankle rolled and

popped. *Id.* at 43–44. The doctor's notes record on her medical intake form that she "tripped on a rug." Doc. 32-2 at 58.

Afterwards, a store employee pulled the mat partially back so that Moore or one of her family members could take a photo of the mat. Doc. 32-1 at 36–37, 51; Doc. 32-2 at 2. An employee informed Moore that the mat had been there for three days. Doc. 32-2 at 4.

The photo of the mat partially pulled back is on the next page. *See id.* at 57. But the mat was flat when Moore tripped stepping off it. Doc. 32-1 at 39.


DEFENDANT'S
EXHIBIT
1

Ollie's Bargain Outlet now moves for summary judgment on both of Moore's claims. Doc. 33. Ollie's contends that there is an absence of substantial evidence that a hidden danger or defect existed on the premises or that Ollie's knew of or created any hidden hazard or defect, defeating Moore's negligence and wantonness claims. Doc. 34 at 11, 18.

## STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "material" if it might affect the case's outcome. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). But "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 927 (11th Cir. 2018) (quotation omitted).

The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out the absence of evidence supporting an essential element of the nonmovant's case. *Id.* at 325.

Once the movant carries its initial burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must come forward with specific facts showing a genuine dispute. *Id.* at 587. Although all reasonable doubts are resolved in the nonmovant's favor, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993), if a rational trier of fact could not find for the nonmovant on the record taken as a whole, there is no genuine dispute for trial, *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting *Matsushita*, 475 U.S. at 587).

## ANALYSIS

"When, as here, federal jurisdiction over the negligence case is founded on diversity, state law governs the substantive issues." *Mendez v. Wal-Mart Stores E., LP*, 67 F.4th 1354, 1359 (11th Cir. 2023). Under Alabama law, the elements of a negligence claim are the same as any tort and require proving a duty is owed, a breach of that duty, causation, and damages. *Harrell v. Wal-Mart Stores E., LP*, 724 F. Supp. 3d 1250, 1256 (N.D. Ala. 2024) (quoting *Byrne v. Fisk*, 385 So. 3d 973, 978 (Ala. 2023)). Assuming without deciding that Moore was an invitee on the premises of Ollie's, Doc. 15 at 3 ¶7; Doc. 34 at 1, Ollie's owed Moore "the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers[.]" *Byrne*, 385 So. 3d at 978. To show a breach of this duty and causation, Moore must show that her fall was caused by a defect on the premises that resulted from Ollie's negligence despite Ollie's knowing about the

defect. *Russell v. E. Ala. Health Care Auth.*, 192 So. 3d 1170, 1177–78 (Ala. Civ. App. 2015).

Moore's wantonness claim is similar, albeit distinct. Whereas negligence is the "lack of due care," wantonness is a conscious "acting, with knowledge … that the doing or not doing of some act will likely result in injury." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007). (citations and emphasis omitted). To succeed, Moore must show that Ollie's placed or refused to move the rubber mat while consciously knowing its placement was likely or probable to cause injury. *Id.*

Assuming that the mat's placement was defective or posed a hazard, Ollie's "duty to make safe or warn is obviated, however, where the danger is open and obvious." *McClurg v. Birmingham Realty Co.*, 300 So. 3d 1115, 1118 (Ala. 2020); *see also Harrell*, 724 F. Supp. 3d at 1257 (collecting cases). "A hazard is open and obvious if it would be apparent to, and recognized by, a reasonable person in the position of the invitee." *Walter v. Branch Hays Farm SC Assocs., LP*, No. SC-2025-0160, 2026 WL 547425, at *3 (Ala. Feb. 27, 2026). An example includes cases in which the plaintiff has "admitted … subjective knowledge of the condition." *McClurg*, 300 So. 3d at 1119.

Although usually a jury question, "a defendant may prevail on the issue at summary judgment by establishing that the condition was open and obvious as a matter of law, meaning that such is the only reasonable conclusion to be drawn from

the evidence." *Harrell*, 724 F. Supp. 3d at 1257. This inquiry generally encompasses considerations like the location and position of the condition, its size and dimensions, its color and whether it contrasted with that of its surroundings, lighting conditions, whether the condition was obscured from view, whether a person might reasonably expect to encounter that hazard in the area, and whether a reasonable person might be expected to be distracted by other items in the area. *See id.* at 1258 (collecting cases).

In its Motion for Summary Judgment, Ollie's contests whether the rubber mat was defective or unreasonably dangerous and argues that any danger posed by the condition of Ollie's premises was open and obvious as a matter of law, thereby relieving Ollie's of any duty to warn Moore. *See* Docs. 33–34. Moore counters that the "raised, uneven mat edge" was a hidden defect caused by Ollie's negligence or conscious disregard of its likelihood to cause injury. Doc. 37 at 1–2. The Court agrees with Ollie's.

* * *

At the outset, Moore's second amended complaint survived Ollie's motion to dismiss solely because of an allegation that the rubber mat was "poorly position[ed] … over a gap in the floor causing the mat to be in an unsafe manner" that may have "posed a hidden danger to customers." Doc. 22 at 4–5. Yet, when asked about these allegations at her deposition, Moore had no knowledge of them. *See* Doc. 32-1 at

38–39. She was asked if she knew anything about a mention in the case of a crack or the mat covering a crack, and she replied, "No, I didn't know." *Id.* She was asked to confirm whether her testimony was that the mat was being used to cover a crack, and again she stated, "I don't know." *Id.* at 39. For good measure, Ollie's stated in its motion for summary judgment that she did not recall that the floor mat was covering a crack, Doc. 34 at 5 ¶12, and Moore explicitly "[a]dmitted that [she] does not recall the mat covering a crack," Doc. 38 at 4 ¶12.

Ordinarily, this admission would end the litigation, since no genuine disputes of material fact remain. The allegation that the mat was covering or hiding a gap or crack is the heart of the case and necessary to sustain it. Moore's admission effectively concedes her case on the merits. However, Moore pivots: "the dangerous condition at issue is" no longer a covered gap, but "the raised and uneven end of the mat." *Id.* "[H]er left foot or left heel caught as she was stepping off the mat because she didn't know the height." *Id.* at 5 ¶23.

Setting aside whether Moore sufficiently pleaded this new allegation, it cannot sustain her case. First, as a matter of law, the mere presence of an industrial rubber mat is not a defect or a hazard upon which a negligence or wantonness claim can be made. *Cf. Nobles v. Wal-Mart Stores Inc.*, 702 F. Supp. 3d 1198, 1207 (N.D. Ala. 2023). Moore does not claim the mat was wrinkled, bulging, worn, slippery, or frayed. *See Clayton v. Kroger Co.*, 455 So. 2d 844, 845 (Ala. 1984); *Nobles*, 702 F.

Supp. 3d at 1204; *Daniel v. Dolgencorp, LLC*, No. 3:23-cv-135, 2025 WL 1828632, at *5 (M.D. Ala. July 2, 2025); *Russell*, 192 So. 3d at 1178. She does not allege anything was wrong with it at all. Rather, she admits the rubber mat was lying flat on the ground, that this rubber mat was a type commonly used to improve the grip of patrons during the rain, and that it was not even raining. *See* Doc. 32-1 at 38–41. Its presence, if anything, demonstrates that Ollie's was fulfilling its reasonable duty of care, not breaching it. Simply put, Ollie's had no duty to remove a grip-enhancing mat from the ground. The mere fact of her injury does not support a presumption to the contrary. *See Ex parte Mountain Top Indoor Flea Mkt., Inc.*, 699 So. 2d 158, 161 (Ala. 1997).

Second, Moore cannot overcome summary judgment based on her allegation that "she didn't know the height" of the "raised, uneven end of the mat" as she was stepping off it. Doc. 38 at 5 ¶23. Her testimony firmly established her subjective knowledge of the mat and any danger it may have posed. And any reasonable person in her position would have been aware of the mat as well.

Moore testified that she saw its location and position as she approached it. Doc. 32-1 at 39–40. It was unavoidable and in the center of the floor, and it was black, contrasted against a concrete floor, with nothing obstructing Moore's view of it. *Id.* at 37–41; Doc. 32-2 at 33. She was even aware of the mat long enough to

contemplate that it may have been part of the store décor, and her elderly mother walked across it ahead of her without any trouble. Doc. 32-1 at 40, 50–51.

Further, Moore acknowledged familiarity with the type of mat. *Id.* at 40. She recognized it as one she might commonly expect to encounter at a store to prevent slips after rain. *Id.* She had seen mats like it before and had not previously slipped upon one. *Id.* at 40–41. She was not distracted but looking straight ahead at it and comprehended the mat as she stepped onto it. *Id.* at 39–40. In every way, Moore saw, comprehended, and was aware of the mat and any danger posed by it.

Finally, Moore stepped onto the mat and took at least two steps across it before stepping off. *Id.* at 42–43. Contrary to her assertion that she did not know the height of the mat, she must have known its height because she stepped onto it and took two steps across it immediately beforehand. A person climbing stairs understands he or she will need to step back down to descend them. Likewise, Moore's steps up onto the mat and then across it demonstrate that she had subjective knowledge that the mat was "high off the ground, like a little step," when she stepped off it. *Id.* at 41–42. Even taking the facts in the light most favorable to Moore, no reasonable jury could find under the circumstances that she was unaware of a height differential mere moments after stepping onto the raised mat.

Thus, Ollie's placement of the industrial rubber mat does not present a danger or hazard sufficient to demonstrate a breach of Ollie's duty of care. Even if it did,

the mat's slight elevation above the ground is an obvious feature, and the uneven height of its edge compared to the concrete floor upon which it was laying does not constitute a hidden defect. The only reasonable conclusion to be drawn from the evidence is either that the mat did not pose any danger or that any danger it presented was open and obvious as a matter of law. Ollie's did not act negligently or engage in wanton conduct by laying flat an industrial rubber mat across the concrete floor.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ollie's Bargain Outlet's Motion for Summary Judgment (Doc. 32). Accordingly, Plaintiff's Unopposed Motion to Continue (Doc. 42) is **DENIED** as **MOOT**.

**DONE** and **ORDERED** this 5th day of November, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE